Alla Kachan, Esq.
Law Offices of Alla Kachan
2799 Coney Island Avenue, Suite 202
Brooklyn, NY 11235
Tel.: (718) 513-3145
Fax: (347)342-3156

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:                                                                           Case No.: 1-25-43215-jmm

      Marine Transport Logistic Inc.,                      Chapter 11

                Debtor.
-----------------------------------------------------------X

### DEBTOR'S RESPONSE TO PNC BANK, NATIONAL ASSOCIATION'S SUPPLEMENTAL OBJECTION TO DEBTOR'S MOTION FOR VIOLATION OF AUTOMATIC STAY ON THE PART OF PNC BANK

      Marine Transport Logistic Inc., the Debtor (the "Debtor") in the above-captioned bankruptcy case (the "Debtor"), by their counsel, Law Offices of Alla Kachan, P.C, hereby files this response to the Supplemental Objection of PNC Bank, National Association ("PNC") to the Debtor's Motion for Violation of Automatic Stay (the "Motion") against PNC Bank, and in support thereof avers as follows:

### BACKGROUND AND JURISDICTION

    1.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§157(a)-(b) and 1334(b). This is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

    2.    On July 3, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, with the United States Bankruptcy Court for the Eastern District of New York. *See ECF Doc. No. 1.*

    3.    The Debtor is an international shipping company that relies entirely on the prompt

payment of shipment costs out of their operating account and on the receipt of international bank wires.

4. Immediately following the filing of the Bankruptcy Petition on July 3, 2025, PNC unilaterally froze all business accounts of the Debtor without notice or explanation.

5. When the Debtor requested a certified check for the balance on the account at the time of filing, so that they could open a Debtor-in-Possession account, that request was denied by PNC.

6. On July 8, 2025, the Debtor filed a Motion for Violation of Automatic stay on the part of PNC. *See ECF Doc. No. 5*.

7. On July 15, 2025, PNC Bank filed an objection to the Debtor's motion. *See ECF Doc. No. 15*.

8. At the July 16, 2025 hearing held on the matter, the Court gave an opportunity to both sides to submit supplemental responses and objections.

9. The Debtor now asks the court to enter an order for sanctions pursuant to 11 U.S.C § 362(k)(1) as the Lender violated the automatic stay pursuant to 11 U.S.C § 362(a)(3) by freezing the Debtor's account.

## **INTRODUCTION**

10. This Bankruptcy case was filed on July 3, 2025. The Debtor is an international marine transport company whose main and only source of business operations is international shipping that relies entirely on payment of shipment costs out of the operating account and on receipt of international bank wires. Immediately after the filing date on July 3, 2025, PNC unilaterally froze all business accounts of the Debtor without notice or explanation. Upon multiple contacts with the bank, the Debtor was advised that it is bank policy to restrain the accounts to

ensure the opening of a Debtor-in-Possession account. However, a request to issue a certified check to the Debtor from the account with the Debtor's funds, so that a DIP account could be opened with a different banking institution, was denied. Furthermore, PNC advised that they will not open a DIP account for the Debtor absent a motion and court order authorizing the opening of a DIP account. The Debtor's operations were effectively halted as of the petition date due to the absolute inability to pay for and effectuate the shipment of freight. Upon further inquiries, bank representatives of PNC refused to provide any of the contact information for the legal department thereof. In light of the foregoing, the Debtor is suffered catastrophic financial loss daily, caused by the unlawful restraint of the funds in a blatant and willful violation of the automatic stay. This action constituted an impermissible exercise of control over property of the estate in violation of the automatic stay under 11 U.S.C. § 362(a)(3).

11.    PNC's Supplemental Objection relies heavily on *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16 (1995), and *In re Randolph Towers Cooperative, Inc.,* 170 B.R. 471 (Bankr. D.D.C. 1994), to argue that such holds are per se lawful. However, these cases are distinguishable, as *Strumpf* involved setoff rights (which PNC does not assert here), and *Randolph Towers* involved a temporary hold where access was preserved via certified check. Moreover, PNC's arguments are internally inconsistent: it claims bank accounts are not "property of the estate" under *Strumpf,* yet cites *In re Turner,* 371 B.R. 877 (Bankr. N.D. Ill. 2007), which explicitly recognizes bank accounts as debts that are property of the estate subject to turnover under § 542(b). This inconsistency undermines PNC's position and highlights that its hold was not a mere "refusal to pay" but an active control over estate property. The Debtor did not cause the delay, rather, PNC's refusal to allow access or issue funds forced the Debtor to seek court intervention. The hold was willful, as PNC knew of the bankruptcy filing and intentionally imposed the restriction. Sanctions are

warranted to compensate the Debtor for resulting damages, including lost operational time and legal fees.

## ARGUMENT

12. To the extent not expressly addressed herein, the Debtor respectfully reasserts and incorporates by reference all arguments, facts, and legal authority set forth in its motion for sanctions for a violation of the automatic stay as though fully stated herein. *See ECF Doc. No. 5.*

### A. *Strumpf* is Inapplicable Because PNC Had No Setoff Right and Did Not Seek Relief from the Stay

13. PNC misrelies on *Strumpf*, where the Supreme Court held that a temporary administrative hold did not violate the stay. In *Strumpf*, the debtor defaulted on a loan with the bank, giving the bank a potential setoff right under 11 U.S.C. § 553. The bank placed a hold on the account balance equal to the debt solely to preserve the status quo while promptly filing a motion for relief from the stay under 11 U.S.C. § 362(d). The Court reasoned that the hold was not a "setoff" under § 362(a)(7) because it lacked permanence and intent to settle accounts. Importantly, the hold was permissible under § 542(b)'s exception, which allows a creditor to withhold payment "to the extent such debt may be offset under section 553." *See Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 116 S. Ct. 286, 133 L. Ed. 2d 258 (1995).

14. Here, PNC asserts no debt owed by the Debtor, no setoff right under 11 U.S.C § 553 and filed no motion for relief from the stay. The hold was not a brief pause to seek court approval but an indefinite restriction to force the Debtor to open new DIP accounts under a court order or obtain a cash management order, actions PNC had no authority or jurisdiction to demand unilaterally, and which were simply erroneous under the applicable provisions of the Bankruptcy Code. Further, unlike in *Strumpf*, the restraint in question was not a debit restraint, it was a global

restraint. The Debtor made a request to have a certified check issues so it could be deposited in a DIP account. A debit restraint means the account holder cannot effectuate payments from that account. A global restraint such as the one present here, prevents an account holder from performing any other transactions including a wire or transfer, or having any access to the account balance in its' entirety.

15. Even if *Strumpf* applied, PNC's hold exceeded its narrow scope. In *Strumpf*, the hold lasted only until the bank sought relief, but here, PNC maintained the hold for over a week, refusing access and a cashier's check, despite the Debtor's requests. This transformed the hold into an impermissible control mechanism, not a temporary preservation tool, in violation of 11 U.S.C. § 362(a)(3).

### B. *Randolph Towers Is Distinguishable and Predates Strumpf's Limitations*

16. PNC cites *Randolph Towers* as the "only reported Chapter 11 case" supporting its position. In *Randolph Towers*, the court held a temporary freeze did not violate the stay, reasoning that a bank account is a contractual promise to pay, not tangible property, and the freeze was not an "exercise of control." *See In re Randolph Towers Cooperative*, 458 B.R. 1 (Bankr. D. D.C. 2011). However, *Randolph Towers* predates *Strumpf* by one year and does not address the setoff exception central to Strumpf's holding. Moreover, the facts are distinguishable as the bank in *Randolph Towers* allowed the debtor to withdraw funds via certified check, preserving access while restricting certain transactions. Here, PNC locked the account entirely, refusing even a cashier's check, which prevented the Debtor from any access and impeded reorganization efforts, the ability to comply with the essential obligation of a Debtor in Possession, to close all pre petition accounts immediately after the filing of the Chapter 11 Bankruptcy petition, and transfer all funds into a Debtor in Possession account, and further conduct ordinary course daily business operations

therefrom.

### C. *In re Calvin is Distinguishable*

17.  PNC has previously relied on *In re Calvin*, 329 B.R. 589 (Bankr. S.D. Tex. 2005), a Chapter 7 case, to argue that an administrative hold does not violate the stay. However, *Calvin* is distinguishable on multiple grounds. First, Calvin was a Chapter 7 liquidation, where the bank froze the account while awaiting a decision from the trustee, which the court found reasonable under the circumstances. Here, in a Chapter 11 reorganization, the Debtor is the debtor-in-possession and stands in the shoes of the trustee pursuant to 11 U.S. Code § 1107(a). The Debtor informed PNC of its decision to access the funds, but PNC rejected the request and imposed the hold anyway. Further, the debtor in *Calvin* relied on § 362(a)(7), which prohibits setoffs, but found no violation because there was no setoff. *See In re Calvin*, 329 B.R. 589 (Bankr. S.D. Tex. 2005). In contrast, the Debtor here argues a violation of 11 U.S.C § 362(a)(3), which prohibits exercises of control over estate property, regardless of setoff. Lastly, the debtor in *Calvin* lacked standing to bring the motion because, in Chapter 7, the account was estate property, under the Chapter 7 trustee's control. Here, as a Chapter 11 DIP, the Debtor has standing to enforce the stay and protect its operations. These distinctions render *Calvin* inapplicable to this Chapter 11 case.

### D. **PNC Bank's Arguments are Internally Inconsistent**

18.  PNC claims under *Strumpf* that a bank account is "not property of the estate" but a mere "promise to pay." Yet, in arguing against turnover under 11 U.S.C. § 542(b), PNC cites *In re Turner Grain Merchandising, Inc.*, 557 B.R. 147, 150 (Bankr. E.D. Ark. 2016), which states that 11 U.S.C. § 542(b) applies to debts that are property of the estate, including bank accounts which are debts owed by a bank to a depositor. *See Id.* This contradiction concedes the point that the account is estate property, and PNC's refusal to allow access without a setoff right violated the

stay. PNC cannot have its cake and eat it too. Either the Debtor's bank account is property of the estate, or it isn't. It is the Debtor's position that the bank account is property of the estate, PNC unlawfully executed control over the account in refusing to release the funds to the Debtor, therefore violating 11 U.S.C. § 362(a)(3).

### E. U.S. Trustee Guidelines Do Not Authorize PNC's Hold

19. PNC invokes the U.S. Trustee Guidelines requiring DIP accounts, but these guidelines bind the Debtor, not the bank, and do not permit creditors to enforce them via self-help. The remedy for non-compliance is a U.S. Trustee objection, not a unilateral freeze. Further, PNC does not have standing or jurisdiction in a Chapter 11 case where there is a Debtor-in-Possession that has an obligation to place its funds in a DIP account and to administer its own estate in a way that applies with the applicable Bankruptcy code provisions. A banking institution does not have the unilateral right, jurisdiction, or standing to restrain an account to ensure compliance with the applicable bankruptcy code provisions just as payment of pre-petition claims and generally the decision of the manner in which DIP funds should be administered. It is a purview of the office of the U.S Trustee to oversee and ensure said compliance through oversight and review and that power certainly does not lie with an individual banking institution through the power of a restraint.

### F. PNC's Violation was Willful, Warranting Sanctions Pursuant to 11 U.S.C. § 105(a)

20. A deliberate action that violates the automatic stay, taken while the violator knew that the stay was in effect, justifies an award of actual damages, with no further showing necessary. *Cyrsen/Montenay Energy Co. v. Esselen Assocs., Inc. (In re Crysen/Montenay Energy Co.), 902 F.2d 1098, 1105 (2d Cir. 1990); In re Robinson, 228 B.R. 75, 80 n.5 (Bankr. E.D.N.Y. 1998).* The action itself being deliberate suffices to constitute a willful violation of the stay, even if the fact that the action would violate the stay was unknown to the offender. *See In re Robinson, 228 B.R.*

*at 80 n.5; In re Olejnik, No. 09-76714-AST, 2010 WL 4366183, at \*5 (Bankr. E.D.N.Y. Oct 28, 2010) (citing In re Bresler, 119 B.R. 400, 402 (Bankr. E.D.N.Y. 1990)).*

21. PNC admits knowledge of the filing and intentionally imposed the hold. Although 11 U.S.C. § 362(k)(1) applies to individuals, courts can award actual damages to corporate Debtors for willful violations via equitable powers under 11 U.S.C § 105(a). The Debtor incurred damages including operational disruptions, lost business opportunities, and attorneys' fees. Punitive damages are appropriate given PNC's refusal to cooperate.

22. Additionally, PNC has an affirmative duty to reverse any such action within a reasonable amount of time". *In re Am. Med. Utilization Mgmt. Corp.*, 494 B.R. 626 at page 635 (Bankr. E.D.N.Y. 2013). That is true even if the creditor did not know of the bankruptcy case at the time the judgment was entered. *In re Taylor*, 190 B.R. 459 at page 461 (Bankr. S.D. Fla. 1995). Therefore, as a result of the PNC's violations of 11 U. S. C. § 362, the Lender is liable to the Debtor for actual damages, punitive damages and legal fees under 11 U.S.C. § 105.

**WHEREFORE**, the Debtor respectfully requests that an order be entered granting the relief requested and any other and further relief as this Court may deem just and proper.

Dated: Brooklyn, New York
       September 11, 2025

Respectfully submitted,

*/s/ Alla Kachan*
Alla Kachan, Esq.
Law Offices of Alla Kachan, P.C.
2799 Coney Island Avenue, Suite 202
Brooklyn, NY 11235
Tel.: (718) 513-3145