Eduardo J. Glas, Esq.
Law Office of Eduardo Glas PC
500 E 83rd St., # 9H
New York, New York 10028
Tel: 917-8641461
eglas@glasattorneys.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

In re:

           Marine Transport Logistic, Inc.,

                       Debtor

Case No.: 1-25-43215-JMM
Chapter 11

---------------------------------------------------------------X

**REPLY IN FURTHER SUPPORT OF MOTION OF JUDGMENT CREDITOR SVETLANA ANUCHINA FOR AN ORDER DISMISSING THIS BANKRUPTCY CASE PURSUANT TO 11 U.S.C. § 1112 (b)**

      Svetlana Anuchina, a creditor in the above referenced bankruptcy case, by and through her attorneys, Law Office of Eduardo Glas PC, hereby submits this reply in further support of her motion for the entry of an Order dismissing the present bankruptcy case pursuant to 11 U.S.C. § 1112 (b). In further support of her motion, Ms. Anuchina states as follows:

**PRELIMINARY STATEMENT**

1. As shown in Ms. Anuchina's moving papers and in this reply below, the Debtor is neither insolvent from a balance sheet perspective nor in any kind of financial distress. The Debtor's recently filed Monthly Operating Reports ("MORs") cement that conclusion. The Debtor is operating profitably and its cash has almost doubled from approximately $10.7 million at the time of filing to $18.7 million as of the end of August 2025. In its opposition, the Debtor does not dispute that the purpose of the filing was to avoid posting an appellate bond in Ms. Anuchina's case to "preserve liquidity." It is the Debtor's burden to show that the filing was done in good faith. Other than empty and vague phrases, the Debtor has offered no real evidence to carry its burden. Because the Debtor is neither insolvent nor in financial distress, and the circumstances surrounding the filing support a finding that it was done simply as a litigation tactic, this case must be dismissed as a bad faith filing under 11 U.S.C. § 1112(b).

**LEGAL ARGUMENT**

3. The Debtor does not (and cannot) dispute the basic facts that were presented in Ms. Anuchina's moving papers. After the filing of those moving papers, the Debtor finally filed MORs for July and August 2025. See ECF ## 34 and 35. While in the Schedules the Debtor indicated that its cash on several bank accounts amounted to $10.7 million on July 3, 2025 (the "Petition Date"), the July MOR shows the Debtor with $18.2 million in its bank accounts, and

the August MOR shows total cash in the bank accounts amounting to $18.74 million.[1]  Id.  In effect, the Debtor has almost doubled its cash in a short span of time.

       4.       Equally important, the MORs on file show that the Debtor is operating profitably. As of the end of July 2025, the Debtor shows a profit from operations of $570,000 (with net income of $450,000); and as of the end of August 2025, the Debtor shows a profit from operations of $677,458 (with net income of $505,000).  Id., Exhibit A to July MOR at pp. 31-32; and Exhibit A to August MOR a pp. 34-35. The Debtor's revenue in those two months averages $2.43 million/month –a figure close to the estimate calculated in Ms. Anuchina's moving papers.

       4.       It is the Debtor's burden to show that its petition was filed in good faith. The Debtor does not properly cite the law in this regard.  Clear Blue Water, LLC v. Oyster Bay Mgmt. Co., 476 B.R. 60, 68-69 (E.D.N.Y. 2012) does not provide that the movant bears the initial burden to make a prima facie showing to support the allegation of bad faith before the burden shifts to the debtor to demonstrate the petition was filed in good faith.  See Opp. Br. at ¶ 7.  The passage referenced by the Debtor in Clear Blue Water reads as follows:

> When a motion is filed to dismiss a case for cause, the moving party carries the burden of demonstrating that such cause exists by a preponderance of the evidence.  **However, if the issue is whether the petition was filed in good faith, the burden shifts to the debtor to demonstrate that the petition was filed in good faith.**

Clear Blue Water, 476 B.R. at 68-69 (internal citations omitted and added emphasis). Regardless, Ms. Anuchina has presented undisputed evidence that the Debtor is solvent and not in financial distress.  The Debtor has almost $20 million in cash alone versus potential liabilities stemming

---

[1] The Debtor has yet to cure many of its filing deficiencies noted in Ms. Anuchina's moving papers.  For instance, the Debtor has yet to file its tax return; the MORs filed do not comply with Section 308 (b) of the Bankruptcy Code; they do not include any projections.  The September MOR is now overdue as well.

from litigation of at most $2 million or so.  Its cash alone is about ten times those liabilities.  In addition, the Debtor is highly profitable as shown in its filed MORs.   Courts have consistently dismissed petitions filed by financially healthy companies with no need to reorganize under the protection of Chapter 11.  See, In re Aearo Techs., LLC, 2023 Bankr. LEXIS 1519 at * 41 (Bankr. S.D. Ind. 2023); In re SGL Carbon, 200 F.3d 154, 166 (3rd Cir. 1999); In re Marsch, 36 F.3d 825, 828-29 (9th Cir. 1994); In re LTL Mgmt., LLC, 64 F.4th 84, 110 (3rd Cir. 2023).  There is no valid bankruptcy purpose and no reason for Chapter 11 absent financial distress or insolvency.  LTL Mgmt., 64 F.4th at 101.

8.      The Debtor conclusory states that its "filing serves valid reorganizational purposes, including managing contingent liabilities, preserving liquidity for operations, and resolving disputes in a centralized forum."  Opp. at ¶ 9.  The Debtor asserts that the cash in its bank accounts "is essential for ongoing operations, including vessel charters, fuel purchases, crew payments, insurance premiums, and port fees—expenses that can exceed millions monthly in the shipping sector."  Opp. at ¶ 11.  Yet, the MORs demonstrate that the Debtor is able to pay those expenses on a monthly basis as they accrue and still continue to accumulate cash in its bank accounts at a rate of almost $1 million in two months. Tellingly, the Debtor has not produced any affidavit from a person with knowledge as to the need or level of cash reserves that the Debtor requires in its operations.  As such, all the Debtor's assertions regarding its operations and the general state of its industry lack any probative value, and cannot help the Debtor carry its burden of proof that the filing was made in good faith.

9.      The Debtor misunderstands the basis for the motion by asserting that Ms. Anuchina is arguing that the "filing is in bad faith because the Debtor is solvent and seeks only a 'tactical litigation advantage'."  Opp. at ¶ 13.  It is true that solvency alone does not preclude the

filing of a petition in good faith. The problem that the Debtor fails to address is that it is not only solvent, but it is far from the financially distressed state that could justify a filing. LTL Mgmt., 64 F4th at 103 ("Congress designed Chapter 11 to give those businesses teetering on the verge of a fatal financial plummet an opportunity to reorganize on solid ground and try again, not to give profitable enterprises an opportunity to evade contractual or other liability," citing In re Cedar Shore Resort, Inc., 235 F.3d 375, 381 (8th Cir. 2000)).

10. The Debtor claims that "[t]he scheduled liabilities of $2 million are conservative; contingent claims from litigations could exceed this, and the Debtor faces potential exposure from unresolved disputes such as the MSC litigation cited by the Movant." Opp. at ¶ 14. The Debtor again makes claims without any type of supportive documentation. There are no other known litigations in the schedules other than the cases involving Ms. Anuchina, Crocus Investment, Commonwealth Leasing and MSC. As noted in Ms. Anuchina's moving papers, in the Crocus litigation, the District Court recently entered a judgment after trial that did not impose any liability on the Debtor. The MSC litigation is already factored into the $2 million total liabilities listed in the Debtor's schedules. Moreover, the MSC case has been pending for a long time and is unlikely to result in any type of judgment in the near future, as a review of the docket reveals that discovery is still ongoing and no trial has yet been scheduled. The only matters that could possibly result in immediate collection actions against the Debtor in the event there were no bankruptcy are Ms. Anuchina's case and possibly Commonwealth Leasing, where a final order was entered but not a judgment. Ms. Anuchina's and Commonwealth Leasing's claims combine to a total of approximately $500,000 – approximately one month of net profits as shown in the Debtor's MORs or simply 2.67% of the Debtors's cash in its bank accounts at the end of August 2025, hardly an amount that could threaten the Debtor's viability or even operations.

The Debtor's claim is a red herring based on non-existing cases, and speculation about the liabilities that may result from the few existing ones. This is not enough to justify the filing on the Petition Date. See MTL, 64 F.4th at 109 ("The 'attenuated possibility' that talc litigation may require [LTL] to file for bankruptcy in the future does not establish its good faith as of its petition date.").

11. Without denying that the bankruptcy here was precipitated by Ms. Anuchina's service of a post-judgment subpoena and to avoid posting an appellate bond, the Debtor argues that "using bankruptcy to manage litigation is not per se bad faith if it serves broader reorganizational goals." Opp. Br. at ¶ 16. The Debtor, however, ignores that "a valid bankruptcy purpose 'assumes a debtor in financial distress.'" LTL Mgmt., 64 F.4th at 101. Indeed, as shown in Ms. Anuchina's moving papers, courts have unanimously held that a bankruptcy filing by a financially healthy petitioner who wishes to avoid posting an appellate bond is an abuse of the bankruptcy laws. See, e.g., In re Bridge to Life, Inc., 330 B.R. 351 (Bankr. E.D.N.Y. 2005) (dismissal of petition as bad faith filing where, among other things, the petitioner had sufficient assets to pay all its creditors in full, had no legally cognizable need for Chapter 11, and the filing was an effort to challenge adverse rulings in state court actions); Mirzataheri v. Dunn, 2017 U.S.Dist. LEXIS 96565 (S.D.Fla. 2017) (affirming order of bankruptcy court dismissing the petition as a bad faith filing after bankruptcy court found that petitioners could pay their debts ten or twenty times over with the amount of assets they held and that they had filed the petition merely to thwart litigation in state court). Here, the Debtor is financially healthy as its own financial disclosures in this court demonstrate. Consequently, the Debtor's use of the bankruptcy laws to avoid posting an appellate bond is an abuse of process and constitutes a bad faith failing. Accordingly, this case should be dismissed.

12.     The Debtor faults the movant for not citing to a multiple factor test that some courts have adopted to determine whether a petition was filed in good faith.  See Opp. Br. at ¶ 17.  Yet, the Debtor acknowledges that such test has been used mostly, if not exclusively, in single-asset real estate where properties had been the subject of foreclosure proceedings prior to a bankruptcy filing.  Id.  Those cases are clearly factually distinguishable, and the factors tailored to such circumstance do not even begin to address the facts of the present case.  Moreover, the Debtor fails to understand that showing financial distress is the key gateway issue here.  As the Third Circuit explained, "absent financial distress, there is no reason for Chapter 11 and no valid bankruptcy purpose."  MDL Mgmt., 64 F4th at p. 101.  Despite the Debtor's unsupported claims of distress, its financial disclosures to the Court (i.e., the Schedules and the MORs) show otherwise.  See, e.g., In re Bridge to Life, Inc., 330 B.R. 351 (Bankr. E.D.N.Y. 2005) (dismissal of petition as bad faith filing where, among other things, the petitioner had sufficient assets to pay all its creditors in full, had no legally cognizable need for Chapter 11, and the filing was an effort to challenge adverse rulings in state court actions); Mirzataheri v. Dunn, 2017 U.S.Dist. LEXIS 96565 (S.D.Fla. 2017) (affirming order of bankruptcy court dismissing the petition as a bad faith filing after bankruptcy court found that petitioners could pay their debts ten or twenty times over with the amount of assets they held and that they had filed the petition merely to thwart litigation in state court).  Therefore, the Court should grant the motion and dismiss the case.

## CONCLUSION

13.     The Debtor is solvent and far from any type of financial distress that could support the filing of a bankruptcy petition.  Courts have unanimously held that absent financial

distress, there is no reason for Chapter 11 and no valid bankruptcy purpose. Consequently, this case should be dismissed. The Debtor has failed to come forward with any evidence to satisfy its burden of proof that this case filed in good faith. Given the timing of the filing, the inexorable conclusion is that the filing was done to avoid posting an appellate bond –an impermissible use of the bankruptcy laws for debtors who are not in financial distress. Accordingly, the motion should be granted and the case should be dismissed.

Dated: October 19, 2025

        Respectfully,

        */s/Eduardo J. Glas*

        Eduardo J. Glas, Esq.
        Law Office of Eduardo Glas PC
        500 E 83rd St., # 9H
        New York, New York 10028
        Tel: 917-8641461
        eglas@glasattorneys.com

        Attorneys for Creditor Svetlana Anuchina