Eduardo J. Glas, Esq.
Law Office of Eduardo Glas PC
500 E 83rd St., # 9H
New York, New York 10028
Tel: 917-8641461
eglas@glasattorneys.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

In re:

                                        Case No.: 1-25-43215-JMM

      Marine Transport Logistic, Inc.,                Chapter 11

                      Debtor

------------------------------------------------------------X

## MOTION OF JUDGMENT CREDITOR SVETLANA ANUCHINA FOR SANCTIONS AGAINST THE DEBTOR, ITS COUNSEL AND COUNSEL'S LAW FIRM PURSUANT TO BANKRUPTCY RULE 9011, 12 U.S.C. § 1927 AND 11 U.S.C. § 105

Svetlana Anuchina, a creditor in the above referenced bankruptcy case, by and through

her attorneys, Law Office of Eduardo Glas PC, hereby submits this memorandum in support of

her motion for the entry of an Order imposing sanctions against the Debtor, its counsel and its

counsel's law firm pursuant to Bankruptcy Rule 9011, 12 U.S.C. § 1927, and 11 U.S.C.

§ 105, for having filed, and continued to prosecute, this bankruptcy case in bad faith.  In further

support of her motion, Ms. Anuchina states as follows:

**PRELIMINARY STATEMENT**

1.        This case has been an abuse of the bankruptcy laws from its inception.  As this Court has already acknowledged in several of the status conferences that have been held and in the recently entered Order to Show Cause why this Case Should not be Dismissed, the Debtor filed its petition showing in its schedules approximately $11 million in cash held in several bank accounts.  Only five creditors appeared listed in the petition with a combined total in claims amounting to approximately $2.1 million.  As shown in subsequent Monthly Operating Reports ("MORs) that were filed with the Court, the Debtor has operated in such a profitable way during the course of this bankruptcy that its cash in hand now exceeds $20 million.  There is not one trade creditor among its originally scheduled claims or in the claims registry.  Indeed, the overwhelming amount of proof of claims that have been filed in the case show that two judgment creditors (Ms. Anuchina and Commonwealth Leasing) and Mediterranean Shipping Company (whose claim, based on the alleged mishandling of a shipment, has yet to be adjudicated) account for more than 90% of all the claims asserted against the Debtor.   As of the filing of its petition, the Debtor had *five times more cash than all those three claims combined*.   As of the last MOR filed, the Debtor had *ten times more cash than all those three claims combined*.  Congress designed Chapter 11 to give those businesses teetering on the verge of a fatal financial plummet an opportunity to reorganize on solid ground and try again, not to give profitable enterprises an opportunity to evade contractual or other liability.  All the same facts that underlie the Court's entry, on March 16, 2026, of the Order to Show Cause for why this case should not be dismissed as a bad, also support the imposition of sanctions against the Debtor, its counsel, and its counsel's law firm pursuant to Bankruptcy Rule 9011; 11 U.S.C. § 1928, and 11 U.S.C. § 105.

2

## JURISDICTION AND VENUE

2.        This Court has jurisdiction over the subject matter of this motion pursuant to 28 U.S.C. §§ 157 and 1334.  This motion is a core proceeding under 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

3.        The Debtor commenced the present bankruptcy case by filing a voluntary petition (the "Petition") under Chapter 11 of the Bankruptcy Code on July 3, 2025.

4.        The Debtor continues to be in possession of her property as debtor-in-possession pursuant to 11 U.S.C. §§ 1108 and 1109.

5.        No committee of unsecured creditors has been appointed in the case.

6.        The Debtor, Marine Transport Logistic Inc., is engaged in the shipping business. It has a Federal Maritime Commission License to act as a Non-Vessel Common Carrier ("NVCOC").  Alla Solovyeva, an individual who filed a companion Chapter 11 also before this Court, owns the Debtor.  See Docket No 25-43213.[1]  In general, the Debtor ships cars to port overseas.  See company webpage at mtlworld.com.

7.        Ms. Anuchina is a creditor of the Debtor by virtue of a judgment entered in the Supreme Court of the State of New York after a jury trial.  The Debtor has appealed the entry of the judgment, but did not post any appellate bond.  Prior to the bankruptcy filing, Ms. Anuchina had served a subpoena *duces tecum* and a restraining notice pursuant to CPLR 5222 to aid in the collection of the judgment.  The filing of the Debtor's petition and imposition of the automatic stay stopped Ms. Anuchina's collection activity on the judgment.

---

[1] The Court has entered an Order to show cause for why Ms. Solovyeva's bankruptcy case should not be dismissed as well as having been filed in bad faith.  A companion motion for sanctions is concurrently being filed in Ms. Solovyeva's case as well.

Ms. Anuchina's Motion to Dismiss the Case as a Bad Faith Filing

8.        On or about September 20, 2025, Ms. Anuchina, through her counsel, filed a motion to dismiss (the "Motion to Dismiss") this bankruptcy case as a bad faith filing pursuant to 11 U.S.C. § 1112(b).  See ECF # 33.  The Motion to Dismiss was premised on the financial condition of the Debtor at the time of the filing of the petition.  The Debtor's own schedules showed that its assets far exceeded its liabilities.  Indeed, the Debtor's cash in hand (approximately $11 million) was more than five times the amount of all its scheduled debts ($2,081,298).  Id. at ¶¶ 11-12.  The Debtor's filing of its petition was precipitated by the service of a subpoena duces tecum and a restraining notice pursuant to CPLR 5222 to investigate means for the collection of the judgment entered in Ms. Anuchina's favor.  Id. at ¶ 23. By virtue of the automatic stay imposed by the bankruptcy filing, the Debtor stopped any collection activity on the judgment without the need to post an appellate bond.  The Motion to Dismiss cited to numerous cases where courts held that debtors abusing the bankruptcy laws when they were financially healthy and were only seeking the protection of the bankruptcy court to avoid posting appellate bonds.  Id. at ¶¶ 23-24).

9.        In its opposition to the Motion to Dismiss, the Debtor did not (and could not) contest any of the underlying facts.  See ECF # 36. The Debtor, however, asserted that its bankruptcy filing "serves valid reorganizational purposes, including managing contingent liabilities, preserving liquidity for operations, and resolving disputes in a centralized forum."  Id. at ¶ 9.  The Debtor further claimed that the cash in its bank accounts "is essential for ongoing operations, including vessel charters, fuel purchases, crew payments, insurance premiums, and port fees –expenses that can exceed millions monthly in the shipping sector."  Id. at ¶ 11.  The Debtor did not file any affidavit of any person with knowledge to support those claims.  Equally

4

important, the Monthly Operating Reports ("MORs") that the Debtor filed while the motion was pending demonstrated that the Debtor was able to pay those expenses on a monthly basis as they accrue and continue to accumulate cash in its bank accounts. See ECF # 39 (Ms. Anuchina's Reply at ¶ 8). Indeed, by the time Ms. Anuchina filed her reply in support of the Motion to Dismiss, the MORs filed with the Court showed that the Debtor's cash in hand had almost doubled since the petition's filing to $20 million. Id. at ¶ 3.[2]

10.     On October 22, 2025, the return date of the Motion to Dismiss, the Court heard oral argument, but did not make any rulings. Instead, it adjourned the hearing to December 17, 2025.

11.     At the hearing on December 17, 2025, the Court again heard argument from the parties. The Court expressed some skepticism about the reasons for the Debtor's filing, but did not wish to rule on the merits of the motion. Instead, the Court granted Ms.Anuchina partial relief from stay so that a pending motion to set aside the verdict and the appeal could proceed in state court. The rest of the motion was denied without prejudice. The Court also directed the Debtor to file a confirmable plan by February 27, 2026, or face the potential dismissal of the case.

The Debtor's Motion to Reduce or Expunge Ms. Anuchina's Claim

12.     On or about December 16, 2025, the Debtor filed a motion to reduce or expunge (the "Motion to Expunge") Ms. Anuchina's Claim. The Debtor claimed that "[a] claim based on a judgment that is on appeal is not fixed or final under New York law, as the appeal preserves the Debtor's right to challenge the Judgment's enforceability." See ECF # 53 at ¶ 12. At the hearing

---

[2] In the last MOR filed with the Court, the Debtor disclosed cash holdings of $20,232,733. See January 2026 MOR (ECF # 61). The Debtor has not filed MORs for February and March 2026 as of the filing of this motion.

on December 17, 2025, the Court warned the Debtor that the Motion to Expunge was contrary to controlling law in the Second Circuit.  The Debtor, however, did not withdraw the motion.

13.    On or about February 3, 2026, Ms. Anuchina filed opposition to the Motion to Expunge.  See ECF # 60.  The Debtor did not file a reply.  On or about February 11, 2026, the Court held a hearing on the Motion to Expunge.  At that hearing, the Court gave the Debtor the option to either withdraw the motion or get it denied.  The Debtor opted for withdrawing the motion.

The Debtor's Plan and Disclosure Statement

14.    Despite being directed to file its plan and disclosure statement by February 27, 2026, or face potential dismissal of the case, the Debtor did not file these documents with the Court until March 10, 2026, the day before a status conference held on March 11, 2026.

The Status Conference of March 11, 2026

15.    At the status conference on March 11, the Court discussed with the parties the plan and disclosure statement that Debtor filed the day before.  Ms. Anuchina's counsel pointed out numerous defects with the plan and disclosure statement that made the plan unconfirmable.  Those defects included, among others, the absence of a liquidation analysis; the failure to provide for interest on the claims; the impermissible division of claims in multiple classes; the failure to allow for the treatment of Ms. Anuchina's claim in a final way instead of seeking to delay its resolution by returning to the bankruptcy court for yet another determination after a decision by Appellate Division.

16.    At the conference, the Court indicated that this case, together with the companion case of the Debtor's principal, do not belong in bankruptcy since neither debtor was insolvent, and they had enough cash on hand to pay all outstanding debts many times over.  The Court

further advice that it would enter an Order to Show Cause why the cases should not be dismissed.

The Order to Show Cause Why the Case Should Not Be Dismissed.

17.     On or about March 16, 20-26, the Court entered an Order to Show Cause Why Case Should Not Be Dismissed as a Bad Faith Filing pursuant to 11 U.S.C. § 1112(b).  The Court scheduled a hearing for May 13, 2026 at 2 pm.

**LEGAL ARGUMENT**

The Court Should Impose Sanctions against the Debtor and its Counsel for its Bad Faith Filing.

18.     Based on the same facts that support a finding of bad faith filing in this case, the Court should impose sanctions against the Debtor, its principal, and counsel under Federal Rule of Bankruptcy Procedure 9011; 28 U.S.C. § 1927, the Court's inherent authority to police the conduct of parties and counsel appearing before the tribunal.  See, e.g., In re Intercorp Intern, 309 B.R. 686, 692 (Bankr. S.D.N.Y. 2004) ("fed.r.bankr. [sic] 9011, 28 U.S.C. §1927 and 11 U.S.C. § 105 each permit the imposition of sanctions for certain types of wrongful conduct, including bad faith filing of a bankruptcy petition.").

19.     Although courts have been reluctant to adopt a *per se* rule that a bad faith filing determination requires the imposition of sanctions, such reluctance appears to be misplaced at least in the Second Circuit, where "the courts have frequently applied the same standards to dismissal/conversion motions and sanctions motions based on bad faith." Id. at 692-693; see also, In re St. Stephen's 350 East 116th, 313 B.R. 161, 170 (Bankr. S.D.N.Y. 2004).   "The only real difference appears to be in the standard of proof: a motion to dismiss under section 1112(b) of the Bankruptcy Code requires a showing of cause by the preponderance of the evidence,

7

whereas evidence of sanctionable conduct must be 'clear' or 'substantial'."  St. Stephens, 313 B.R. at 170.

        a.        The Standard under Rule 9011

        20.      A bankruptcy petition, pleadings, motions or other papers presented to the Court must be signed by the party's attorney.  Rule 9011 (a).  Since a bankruptcy petition must be verified (Rule 1008), the petition must be signed by a person with personal knowledge of its contents as well as the attorney for the debtor.  Intercorp, 309 B.R. at 693.   Here, Alla Solovyeva (Solovyeva) , the Debtor's owner, verified the petition and Alla Kachina, Esq., (Kachina), signed on behalf of her firm as the Debtor's attorney.  See ECF # 1. [check]

        21.      By signing the petition, Solovyeva and Kachina made certain representations. Under Bankruptcy Rule 9011 (b):

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after and inquiry reasonable under the circumstances, --
>
> (1) it is not presented for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed.R.Bankr. 9011 (b).

22.     Rule 9011 is based on Rule 11 of the Federal Rules of Civil Procedure.  Courts'

decisions under Rule 11 guide the interpretation and application of Bankruptcy Rule 9011.  In re

Highgate Equities, Ltd., 279 F.3d 148, 151 (2d Cir. 2002).  The "safe harbor" provision in

Bankruptcy Rule 9011(c)(1)(A), however, does not apply if the bad faith relates to the filing of

the petition "since the filing has immediate, serious consequences and there is no absolute right

to withdraw a chapter 7 or chapter 11 petition."  Intercorp, 309 B.R. at 694, n. 10; R.

9011(c)(1)(A) ("[the safe harbor] shall not apply if the conduct alleged is the filing of a petition

in violation of subdivision (b).").

23.     "Rule 11 'establishes an objective standard, intended to eliminate any 'empty-

head pure-heart' justification for patently frivolous arguments.'"  Id. at 694 (citing Fed.R.Civ.P.

11 advisory committee's note (1993)).   The decision whether to impose sanctions for a violation

of the Rule is discretionary.  Id.  If imposed, sanctions could be directed against the law firm as

well as the attorney within the firm that signed the pleading.  Id.

24.     "[A] petition may be deemed frivolous if it is clear that on the filing date there

was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability

that it would eventually emerge from bankruptcy proceedings."  In re Cohoes, 931 F.2d 222, 227

(2d Cir. 1991); accord In re C-TC 9th Ave. P'ship, 113 F3d 1304, 1310 (2d Cir. 1997).  A court

"should conclude that a debtor has no demonstrable intent to reorganize only if, upon

considering the totality of the circumstances, there is substantial evidence to indicate that the

debtor made a bad faith filing."  In re Cohoes, 931 F.2d at 227.  Equally importantly, "an entity

may not file a petition for reorganization which is solely designed to attack a judgment

collaterally –the debtor must have some intention of reorganizing."  Id. at 228.  Crucially here,

"[a]lthough a debtor need not be *in extremis* in order to file such a petition, it must, at least, face

such financial difficulty that, if it did not file at that time, it could anticipate the need to file in the future." Id.

25. The Debtor here never faced any financial difficulties that could have justified the filing of a bankruptcy petition. On the contrary, the Debtor's own schedules at the time of filing show that it was solvent, and that it had cash in hand (approximately $11,000,000) many times over to pay all of its scheduled liabilities ($2,081,298). See ECF # 22 (Aff. pursuant to Local Rule 1007-4 at ¶ 7, and Schedules A/B Assets). Its cash in hand has more than doubled from the $10,717,482.82 on the petition date to $20,232,732.67 as of January 31, 2026. Id. and ECF # 61. As each of the MORs filed shows, the Debtor has been profitable each single month since the filing of the petition, and most likely prepetition as well.[3] See ECF ## 34; 35; 42; 49; 59 and 61. In its Affidavit pursuant to EDNY Local Bankruptcy Rule 1007-4, the Debtor admitted that the "circumstances leading to the Debtor's Chapter 11 filing were as follows: a pending action captioned *Svetlana Anuchina v. Marine Transport Logistic Inc. et al.*, along with several other business litigation." See ECF # 22, ¶ 22. Indeed, the Debtor filed its petition shortly after Ms. Anuchina served it with a post-judgment subpoena and a restraining notice to aid in the enforcement of the judgment she had obtained in state court against the Debtor and its principal, Alla Solovyeva. See ECF [Docket No. 25-43213] Doc. # 16-2 and 16-6). By taking advantage of the automatic stay imposed by the petition filing, the Debtor avoided the posting of a bond required under New York State law to stop the collection of the judgment while the Debtor's appeal of Ms. Anuchina's judgment is pending. This undisputed fact, together with the Debtor's

---

[3] The Debtor never filed any historical financial information for its prepetition operations as required to do. However, the obvious fact that it does not have any trade creditors shows that it was paying all its bills in the regular course of business from the cash generated from operations. As of the filing of this motion, the Debtor has yet to file MORs for February and March 2026. The Debtor never filed an MOR for November 2025.

healthy financial condition support not only an inference, but the inexorable conclusion, that the Debtor filed its petition for improper purposes under Rule 11.  See, e.g., In re Marsch, 36 F.3d 825, 831 (9th Cir. 1994) ("… the bankruptcy court found that the petition was filed solely to delay collection of the judgment and avoid posting an appeal bond, even though debtor had the ability to satisfy the judgment with nonbusiness assets.  Debtor's action was a transparent attempt to use a Chapter 11 petition and the resulting stay as an inexpensive substitute for the bond required under state law.  When combined with the petition's flimsy legal basis, this robust showing of improper purpose clearly demonstrates that sanctions were in order."); Mirzataheri v. Dunn, 2017 U.S.Dist. LEXIS 96565 (S.D.Fla. 2017) (affirming bankruptcy court's imposition of sanctions for bad faith filing where debtor had more than sufficient assets at the time of filing to cover his liabilities), aff'd. 2018 U.S.App. LEXIS 11761d (11th Cir. 2018); In re Patrick J. Collins, 250 B.R. 645 (Bankr. N.D. Ill. 2000) (Sanctions under Rule 11 appropriate where: "Lloyds existing and threatened claims did not constitute an actual, substantial danger to Collins' economic viability; he is able to pay them, but does not want to… The Court finds that Collins and Brisky and the Firm filed the Chapter 7 petition, not to obtain relief for an honest but unfortunate debtor, but as a cutthroat litigation tactic intended to delay and frustrate Lloyd's in the course of litigation…").

26.    Furthermore, the Debtor and its counsel should have known that existing law did not support the filing of the petition in this case.  Numerous cases in this circuit and in several others have cemented the holding that while a debtor "need not be *in extremis* in order to file such a petition, it must, at least, face such financial difficulty that, if it did not file at that time, it could anticipate the need to file in the future."  Cohoes, 931 F.2d at 228.  If a party is not facing current, or near future, financial difficulties when it files a bankruptcy petition, it cannot take

advantage of bankruptcy protections.  LTL Mgmt., LLC, 64 F4th  84, 103 ("Congress designed Chapter 11 to give those businesses teetering on the verge of a fatal financial plummet an opportunity to reorganize on solid ground and try again, not to give profitable enterprises an opportunity to evade contractual or other liability," citing In re Cedar Shore Resort, Inc., 235 F.3d 375, 381 (8th Cir. 2000)); In re SGL Carbon, 200 F.3d 154, 166 (3rd Cir. 1999) ("Courts, therefore, have consistently dismissed Chapter 11 petitions filed by financially healthy companies with no need to reorganize under the protection of Chapter 11.  Those courts have recognized that if a petitioner has no need to rehabilitate or reorganize, its petition cannot serve the rehabilitative purpose for which Chapter 11 was designed." (citations omitted)); In re Marsch, 36 F.3d 825, 828-29 (9th Cir. 1994);  In re Aearo Techs., LLC, 2023 Bankr. LEXIS 1519 at * 41 (Bankr. S.D. Ind. 2023) ("Courts have consistently dismissed Chapter 11 petitions filed by financially healthy companies with no need to reorganize under the protection of Chapter 11." (citing to several cases in various circuits)); In re Bridge to Life, Inc., 330 B.R. 351 (Bankr. E.D.N.Y. 2005) (dismissal of petition as bad faith filing where, among other things, the petitioner had sufficient assets to pay all its creditors in full, had no legally cognizable need for Chapter 11, and the filing was an effort to challenge adverse rulings in state court actions). Given the state of the law and the Debtor's healthy financial condition at the time of the filing, the filing of the petition in this case was frivolous because it was unsupported by existing law or by a good faith argument to change such law.  Accordingly, the Debtor and its counsel should be sanctioned for violating R. 9011 (b)(2).  Similarly, the Debtor's claims of financial distress were unsupported and in fact contradicted by the Debtor's own schedules and MORs filed with the Court.  As such, the Debtor also violated R. 9011(3).  Finally, the Debtor violated R. 9011(1)

12

because its filing has caused unnecessary delay and has needlessly increased the cost of litigation.

        b.        Sanctions under 28 U.S.C. § 1927 and the Court's Inherent Power

27.     A Court has inherent authority to supervise and control its own proceedings, and to require the payment of the other party's attorney's fees by one who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Oliveri v. Thompson, 803 F.2d 1265, 1272 (2d Cri. 1986). The inherent power to sanction "stems from the very nature of courts and their need to be able to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." U.S. v. International Bd. of Teamsters, 948 F.2d 1338, 1345 (2d Cir. 1991). It is not limited to bad faith filings; the Court can award sanctions either for commencing or for continuing an action in bad faith, vexatiously, wantonly, or for oppressive reasons. Oliveri, 803 F.2d at 1272. The Court may award sanctions under its inherent authority against an attorney as well as a party. Id. at 1273. The only meaningful difference "between an award made under § 1927 and one made pursuant to the court's inherent power is … that the award under § 1927 are made only against the attorneys or other persons authorized to practice before the courts while the an award made under the court's inherent power may be made against an attorney, a party, or both." In re Spectee Group, Inc., 185 B.R. 146, 158 (Bankr. S.D.N.Y. 1995) (citing Oliveri, 803 F2d at 1273).

28.     "The hallmark of bad faith is the attempt to abuse the judicial process.' Spectee Group, Inc., 185 B.R. at 155. The bad faith inquiry requires the court to determine whether the debtor "misrepresented facts in its submissions, unfairly manipulated the Bankruptcy Code, or otherwise proposed a plan in an inequitable manner." Id. Here, as shown above, the filing of the petition was an unfair manipulation of the Bankruptcy Court. The Debtor's and its counsel's

13

sanctionable conduct continued beyond the filing of the petition, during the whole course of this bankruptcy case.

29.    First, on or about September 20, 2025, Ms. Anuchina filed a motion to dismiss the bankruptcy case as a bad faith filing.  See ECF # 33.  Ms. Anuchina relied on the Debtor's own filings (i.e. schedules, and monthly reports), showing that the Debtor held enough cash many times over to pay all its debts.  The Debtor still opposed the motion, claiming, without any support from any person with knowledge, that it required all its cash to operate its business.  See ECF # 36 at ¶¶ 9-11.  The Debtor's own MORs refuted that unsupported claim, as the reports showed that the Debtor generates enough cash on a monthly basis to pay all its operating expenses and generate monthly profits.  See, e.g., ECF ## 34; 35; 42; 49; 59 and 61.

30.    Subsequently, on or about December 16, 2025, the Debtor filed a motion to expunge Ms. Anuchina's claim.  ECF # 53.  Prior to the return date of that motion, at a status conference held in December 17, 2025, the Court left little doubt that it would deny the motion as the Debtor had failed to cite to the controlling law in the Second Circuit.  Despite such a warning, the Debtor did not withdraw the motion then or at any time before the return date.  The Debtor's failure to withdraw the motion forced Ms. Anuchina to file opposition papers and appear on the return date. ECF # 60.  It was only at the hearing on the return date that, upon given the choice by the Court between denial and withdrawal, the Debtor chose to withdraw the motion.  See Docket entry dated Feb. 11, 2026. The motion was unnecessary, unsupported by controlling law, and wasted the resources of the Court and Ms. Anuchina.

31.    Finally, the Debtor filed a plan and disclosure statement on or about March 10, 2026, the day before a status conference.  ECF # 63.  On or about December 17, 2025, the Court had ordered the Debtor to file a confirmable plan by February 27, 2026, or face dismissal.  The

plan filed was not just late, but was unconfirmable.  Crucially, neither the plan nor the disclosure statement included a liquidation analysis.  Id.  Despite the fact that the Debtor is solvent and that it could use its cash in hand to pay all its creditors many times over, the Debtor asserts that its Plan to pay claims over a 60- month period, without interest, would provide a greater recovery for creditors than a liquidation.  The Debtor's own MORs refute such a claim.  Moreover, the law requires a solvent debtor to pay interest on its creditor's claims.  See, In re LATAM Airlines Grp. S.A., 55 F.4th 377 (2d Cir. 2022) (solvent debtor exception requiring the payment of pendency interest to unsecured creditors to render their claims unimpaired survived the enactment of the Bankruptcy Code); In are PG&E Corp., 46 F.4th 1047 (9th Cir. 2022) (ruling that a solvent debtor's chapter 11 plan must pay pendency interest to unsecured creditors to render their claims unimpaired).

32.     The Plan further proposes improper classification of creditors. There are four/five classes of unsecured creditors, but there is no legal justification to treat any of these classes separately.  Furthermore, the Plan does not propose to pay Ms. Anuchina's and Commonwealth Leasing's claims.  All the Plan does is indicate that after the appeals initiated by the Debtor in state court, the parties must return to the Bankruptcy Court to determine the treatment of the claims.  This shows again that the Plan, and the Debtor's bankruptcy case in general, have been filed to delay and obstruct Ms. Anuchina and Commonwealth Leasing.  The Bankruptcy Court has no jurisdiction to review a state court judgment.  See, e.g., Texaco v. Penzoil Co., 784 F.2d 1113, 1142 (2nd Cir. 1986) ("Texaco contends that the *Rooker-Feldman* doctrine does not apply to collateral federal attacks on state judgments that have not attained appellate finality.  We disagree and know of no decision so holding.  Indeed, courts have not hesitated to apply the *Rooker-Feldman* doctrine to judgments which Texaco would label as 'non-final.'").  Such a

15

judgment constitutes a valid claim against the estate.  In re Euro-American Lodging Corp., 357 B.R. 700, 712 (Bankr. S.D.N.Y. 2007) ("Since CDR holds an unstayed money judgment of approximately $225 million, its claim is not contingent or subject to a bona fide dispute," despite the existence of pending appeals.).  The proper treatment under a proper Plan would have set aside reserves to pay those claims in the event the judgments are affirmed through the state appellate process.  Moreover, given the solvency of the Debtor's estate, the reserves should have included interest at the New York post-judgment rate of nine (9) per cent.  Ultra Petroleum Cor. v. Ad hoc Committee of OpCo Unsecured Creditors (In re Ultra Petroleum Corp.), 51 F.4th 138 (5th Cir. 2022). The Plan, as presented, runs afoul of the absolute priority rule since it provides that the current owner of the Debtor, Alla Solovyeva, would retain her ownership interest intact while the creditors are not being paid in full.  The Plan claims that Alla Solovyeva will contribute "new value" toward the payment of claims, but has no specificity as to the amount. Nor does the Plan indicate that Ms. Solovyeva is herself a debtor in bankruptcy in another case. In short, the Plan fails under numerous tests.

33.     The numerous deficiencies that made the Debtor's proposed plan unconfirmable further demonstrates that the Debtor has been abusing the Bankruptcy laws, wasting the Court's time and resources, and harassing to creditors such as Ms. Anuchina who have been forced to participate in these proceedings.

Proposed Sanctions

34.     The sanctions that are commonly imposed on the type of conduct involved here include the attorneys' fees and costs incurred in litigating the present bankruptcy case, including the motion for sanctions.  Spectee, 185 B.R. at 160 ("The injured party can recover those 'attorney's fees incurred attributable to investigating, researching and fighting' the debtor's

meritless petition as well as the fees incurred 'to research, prepare and prosecute' its sanctions motion.").

35.     "The same standards of compensation and reimbursement apply whether sanctions are awarded under Fed.R.Civ.P. 11 (and hence under Fed.R.Bankr.P. 9011), 28 U.S.C. § 1927 or the Court's inherent power." <u>Id.</u>   The amount to be awarded is left to the Court's discretion.  Id.  The party seeking the sanction must provide the Court with contemporaneous records showing, for each attorney involved, the date, amount of time and nature of the work performed, and must also showed that the fees and expenses were reasonable and necessary.  <u>Id.</u> "The court normally begins with the lodestar amount, and may then adjust it upward or downwards."  Id.  In fact, the lodestar amount is the typical sanction.  <u>Id.</u>

36.     Attached to the accompanying certification of Eduardo Glas, Esq., are the contemporary records of the tasks and attorney time involved in the litigation of this matter.  It is respectfully submitted that all the tasks recorded and the time incurred were reasonable and necessary to accomplish the objective of fighting this frivolous case.  It is also respectfully submitted that the hourly rate charged is reasonable for an attorney of Mr. Glas' experience and is in fact almost twenty per cent lower than the hourly rate of the Debtor's attorney.   <u>See</u> ECF # 26 (Retention Application of Law Office of Alla Kachan, P.C. at ¶ 14).  Consequently, the Court should direct the Debtor, the Law Office of Alla Kachan P.C., and Ms. Kachan, jointly and severally, to pay the sum of $21,330 as sanctions pursuant to Fed.R.Bank.P. 9011, 28 US.C. § 1927, and the Court's inherent power.

## CONCLUSION

37.    For the above-mentioned reasons, the motion should be granted.  The Debtor, its counsel, and its counsel's law firm should be sanctioned by directing them, jointly and severally, to pay Ms. Anuchina's attorney's fees in the amount of $21,330.

Dated: April 24, 2026

Respectfully,

*/s/Eduardo J. Glas*

Eduardo J. Glas, Esq.
Law Office of Eduardo Glas PC
500 E 83rd St., # 9H
New York, New York 10028
Tel: 917-8641461
eglas@glasattorneys.com

Attorneys for Creditor Svetlana Anuchina